```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Karen Throckmorton,           :

     Plaintiff,            :

  v.                           :         Case No. 2:15-cv-2772

                                                JUDGE ALGENON L. MARBLEY
Commissioner of Social       :         Magistrate Judge Kemp
Security,

     Defendant.            :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Karen Throckmorton, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. The former application was filed on July 10, 2012, and the latter on June 21, 2012. Both alleged that Plaintiff became disabled on January 1, 2011.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on June 25, 2014. In a decision dated July 31, 2014, the ALJ denied benefits. That became the Commissioner's final decision on July 31, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on April 8, 2016. Plaintiff has not filed a statement of errors but, at the Court's direction (Doc. 17), the Commissioner filed, on September 19, 2016, a brief in support of the administrative decision. Plaintiff did not reply to that brief, so the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 42 years old as of the date of the

hearing and who is a high school graduate, testified as follows. Her testimony appears at pages 43-61 of the administrative record.

Plaintiff was first asked about her work history. She said she had worked at a hotel as a housekeeper, but not for long, and also tried to work at a Subway restaurant. Before that, she was a caregiver for people with either physical or mental disabilities, and she had also worked at a McDonald's for seven years. She was both a cook and a cashier, and did cleaning as well. Additionally, she worked at a Go-Mart as a cashier, stock person, and deli attendant.

In terms of medical problems, Plaintiff testified that her depression was the worst. She was being treated for that condition and saw both a doctor and a therapist. Plaintiff was also on blood-thinning medication for a blood clot in her leg. She still had pain in her left leg and in both hips. She saw her treating physician on a yearly basis.

Plaintiff said that she could stand for fifteen minutes at a time and could not bend forward all the way. She could squat a little bit and had no problems with her arms or hands. She could lift ten pounds and could sit for fifteen minutes as well. Additionally, Plaintiff could take care of her personal needs without help and cooked for her children.

On a typical day, Plaintiff stayed at home unless she walked her children to school. She took care of three dogs, did dishes, vacuumed, dusted, and did laundry. She shopped for groceries on a weekly basis and attended her son's basketball games. She also went to teacher meetings for her children. She had no hobbies and did not belong to any organizations.

### III. The Medical Records

The pertinent medical records are found beginning at page 311 of the record and can be summarized as follows. The Court

will summarize the most significant of those, focusing on records which might support a claim that the ALJ did not properly evaluate Plaintiff's ability to do work-related activities for the time period after her alleged onset date of January 1, 2011.

Many of the records relate to Plaintiff's deep venous thrombosis, which developed in 2010. She was started on blood thinners then. At the time, she was also taking medication for depression. Dr. Sethi evaluated her for purposes of her disability claim on November 5, 2012, and noted her history of thrombosis. His physical examination showed her to have some mild tenderness behind her left knee. Her range of motion was normal and he found no muscle weakness or atrophy. His impression was a history of remote blood clot, a history of scoliosis without neurological deficit, and depression. Dr. Sethi believed Plaintiff could do medium work. (Tr. 564-66).

A consultative psychological evaluation was done by David Bousquet, M.Ed. His report, dated November 7, 2012, states that Plaintiff was taking medication for depression but did not have a consistent response to it. She had appetite problems and found herself frequently depressed and isolated. She was very emotional and had low energy. Plaintiff also described symptoms of anxiety when being around others and said she was distracted by her thoughts and feelings. Mr. Bousquet diagnosed a bipolar disorder, PTSD, and personality disorder with dependent and avoidant features, and rated her symptom GAF at 50 and her functional GAF at 60. He thought that she could understand job instructions, would at times have problems maintaining attention and concentration, would have problems at times relating to others in the work setting, and would have difficulties responding appropriately to workplace stress and pressure. (Tr. 572-79).

There are a large number of treatment records from

Southeast, Inc., relating to Plaintiff's mental health conditions.  Typically, they described her as having bipolar disorder of moderate severity and a GAF of 50 (later increased to 55).  An assessment from 2013 indicated that Plaintiff had depressive symptoms on a daily basis and that she reported anxious/fearful thoughts, decreased sleep, difficulty concentrating, excessive worry, fatigue, racing thoughts, and mood swings.  Her symptoms had worsened in the months prior to the assessment.  Those symptoms improved with medication.  Later, she reported stress from an abusive relationship and indicated that she was looking for work.  Although she reported panic attacks after her 2014 hysterectomy, by March of that year she was doing better and said those were well-controlled and her mood was stable.  (Tr. 590-711).  Other than some records relating to her treatment for a pulmonary embolism in 2014, there is no other significant medical evidence.

State agency reviewers also expressed opinions about Plaintiff's residual functional capacity.  On November 7, 2012, Dr. Torello stated that Plaintiff could do a range of light work with some restrictions (Tr. 73-74), and Dr. Perencevich later concurred.  Similarly, on November 8, 2012, Dr. Rudy said that Plaintiff could work in an environment with only occasional changes in duties and no demands for fast pace, could interact superficially with others, and could carry out simple instructions.  (Tr. 75-77).  Dr. Goldsmith, the second reviewer, agreed with this assessment.

### IV.  The Vocational Testimony

Dr. Ostrowski was called to testify as a vocational expert at the administrative hearing.  His testimony begins at page 61 of the administrative record.

Dr. Ostrowski first testified about Plaintiff's past relevant work.  He said that the housekeeper job was unskilled

and light, as was the fast-food worker job. The self-serve station attendant job was also light but semi-skilled, and the home attendant job was medium and semi-skilled.

Next, Dr. Ostrowski was asked some questions about someone with Plaintiff's background and who could work at the light exertional level but could not climb ladders, ropes, or scaffolds, and could climb ramps and stairs only occasionally. Also, the person could stoop occasionally and had to avoid exposure to hazards like moving machinery and unprotected heights. From a mental standpoint, the person could do simple, routine, unskilled work with only occasional interaction with supervisors, co-workers, and the public, and with no rapid production quotas or assembly-line work. Dr. Ostrowski said that someone with those restrictions could do Plaintiff's past job as a housekeeper cleaner, and could also work as a storage facility rental clerk, marker, or mail clerk. Dr. Ostrowski gave the numbers for those jobs which exist in the local and national economies. He confirmed that his testimony was consistent with the <u>Dictionary of Occupational Titles</u>.

   V. <u>The Administrative Law Judge's Decision</u>

 The Administrative Law Judge's decision appears at pages 17-29 of the administrative record. The important findings in that decision are as follows.

 The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Second, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including history of a remote blood clot in the left iliac vein status post stent placement and embolectomy in May 2010; history of pulmonary embolism in January, 2014; major depressive

disorder/diagnosis of bipolar disorder; anxiety disorder/ diagnosis of posttraumatic stress disorder; and diagnosis of personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could work at the light exertional level but could not climb ladders, ropes, or scaffolds, and could climb ramps and stairs only occasionally. Also, she could stoop occasionally and had to avoid exposure to hazards like moving machinery and unprotected heights.  From a mental standpoint, Plaintiff could do simple, routine, unskilled work with only occasional interaction with supervisors, co-workers, and the public, and with no rapid production quotas or assembly-line work.

With these restrictions, the ALJ concluded that Plaintiff could not do any of her past relevant work, finding that although she could work as a housekeeper cleaner, she had not done that job long enough for it to qualify as past relevant work. However, based on the vocational testimony, the ALJ found that she could do a significant number of light jobs including storage facility rental clerk, marker, or mail clerk.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

### VI.  Analysis

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.

NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   The Commissioner's brief argues that the ALJ reasonably evaluated both Plaintiff's physical and mental limitations.  The ALJ found no ongoing problems from the 2010 blood clot or any significant physical limitations from the 2014 embolism.  Both were short-term problems and were treated adequately.  Given the medical evidence, that is a reasonable conclusion to reach.

   As far as other physical conditions are concerned, the Commissioner notes that Dr. Sethi found, on the basis of his examination, that Plaintiff could do medium work, but that the ALJ resolved the issue in favor of the opinions of the state agency reviewers, who limited Plaintiff to light work.  Again, there is no contrary evidence from any treating source, and in the absence of such evidence, the ALJ was entitled to rely on the state agency physicians' opinions, which were consistent with the medical evidence and more favorable to Plaintiff than Dr. Sethi's

assessment. These were all reasonable conclusions.

As to Plaintiff's mental impairments, which she testified were the more severe ones preventing her from working, the Commissioner notes that, again, there is no opinion evidence on the issue of Plaintiff's mental abilities other than those expressed by Mr. Bousquet, the consultative examiner, and the two state agency reviewers, both of whom had the benefit of his evaluation. A reasonable person could conclude, from a review of these opinions, that Plaintiff could work although she had some psychological limitations which affected her ability to deal with a high-stress work environment or more than occasional interaction with others in the workplace.

The ALJ did not ignore the evidence from Plaintiff's treating counselor. He noted that the records from Southeast, Inc., showed that Plaintiff's symptoms were fairly well controlled with medication and that her symptoms increased in response to situational stress, after which they improved again. He also pointed out that Mr. Bousquet rated her functional GAF at 60 which indicates limitations of only mild to moderate severity. Finally, as required, the ALJ considered Plaintiff's activities of daily living and correctly observed that she could care for herself, do household chores, care for her children and animals, go shopping, and attend school events. He thought that these activities were not necessarily supportive of a claim of disabling mental symptoms, and a reasonable person could have reached that conclusion also.

Lastly, the ALJ had, in the record, testimony from a vocational expert that someone of Plaintiff's background and with her physical and psychological limitations could still work. Again, he was entitled to rely on that testimony since it was not contradicted by any other evidence.

It is important to note that, when reviewing a decision like

the one made by the ALJ in this case, this Court does not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). It can review the ALJ's decision to make sure that the law was properly followed - which it was in this case - and to see if there is enough credible evidence to support the conclusions reached by the ALJ. That standard is satisfied here, since the ALJ essentially relied on both medical and vocational evidence that was not contradicted by anything else in the record. Under those circumstances, there is no basis on which the Court can either reverse the ALJ's decision or remand the case for further proceedings. Consequently, the ALJ's decision should be affirmed.

## VII. Recommended Decision

Based on the above discussion, it is recommended that judgment be entered in favor of the Commissioner and that this case be dismissed.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the

Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge